IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MAACO FRANCHISOR SPV LLC,<br><br>Plaintiff<br><br>vs.<br><br>KNACK FIX, LLC, an Indiana limited liability company, AWS HATTAB, an Individual, and EYAS HATTAB, an Individual,<br><br>Defendants. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff, MAACO FRANCHISOR SPV LLC ("Maaco"), for its Complaint against Defendants, KNACK FIX, LLC (the "Operating Company"), AWS HATTAB, and EYAS HATTAB, (together, "Defendants"), alleges and states as follows:

## BRIEF SUMMARY

1. By this action, Maaco seeks (i) injunctive relief because Defendants are operating a motor vehicle painting and body repair shop in violation of a written non-competition agreement and (ii) damages resulting from Defendants' violations of the parties' franchise agreement.

## THE PARTIES

2. Plaintiff, Maaco Franchisor SPV LLC, is a limited liability company organized and existing under the laws of the State of Delaware, with its offices and principal place of business at 440 South Church Street, Suite 700, Charlotte, Mecklenburg County, North Carolina 28202-2059.

3. Maaco Franchisor SPV LLC is a Delaware limited liability company, and its sole member is Driven Systems LLC. Driven Systems LLC is a Delaware limited liability company,

and its sole member is Driven Brands Funding, LLC. Driven Brands Funding, LLC is a Delaware limited liability company, and its sole member is Driven Funding HoldCo, LLC. Driven Funding HoldCo, LLC is a Delaware limited liability company, and its sole member is Driven Brands, Inc. Driven Brands Inc. ("Driven Brands") is a Delaware corporation with its principal place of business at 440 S. Church Street, Suite 700, Charlotte, North Carolina 28202. Thus, for jurisdictional purposes, Driven Brands Inc. and Maaco Franchisor SPV LLC are citizens of both Delaware and North Carolina.

4. Upon information and belief, Knack Fix, LLC is an Indiana limited liability company with a principal place of business at 18 Interstate 32, Westfield, Indiana 46074.

5. Upon information and belief, Aws Hattab is a citizen of the State of Indiana residing at 3988 Dolan Way, Carmel, Indiana 46074.

6. Upon information and belief, Eyas Hattab is a citizen of the State of Indiana residing at 3988 Dolan Way, Carmel, Indiana 46074.

## JURISDICTION AND VENUE

7. This Court has *in personam* jurisdiction over this action, and of the parties, because Maaco's claims arise out of promises made by Defendants in writing to be performed within the Court's jurisdiction by virtue of Rule 4(k)(1)(A), Federal Rules of Civil Procedure.

8. Additionally, this Court has personal jurisdiction over Defendants because they consented to such jurisdiction in Section 25.B of the parties' applicable franchise agreement.

9. Defendants have purposefully availed themselves of the protections of the State of North Carolina and its jurisdiction through his systematic and continuous contacts with the State of North Carolina. For example, pursuant to the parties' applicable franchise agreement, Defendants were required to pay all amounts due to Maaco at its corporate headquarters in North

Carolina.

10. This Court also has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Maaco is a citizen of Delaware and North Carolina, Defendants are citizens of Indiana, and the amount in controversy is over $75,000.00, exclusive of interests and costs.

11. Venue in this judicial district and division is proper pursuant to 28 U.S.C. §1391(b)(2) because, among other things, a substantial part of these events or omissions giving rise to the claims in this action occurred in this judicial district and division and Defendants negotiated for a long-term franchise and contractual relationship that required obligations to be performed in this district.

12. Venue is also appropriate in this judicial district and division because Defendants contractually consented to this venue in Section 25.B of the parties' applicable franchise agreement, which governs the parties' relationship.

## GENERAL ALLEGATIONS

### *The Nature of Maaco's Business*

13. Maaco grants franchises to qualified persons to establish and operate motor vehicle painting and body repair centers with the license to use and display Maaco's federally-registered trade name, trademarks, logos, and other proprietary marks (the "Maaco Marks").

14. Since its founding, Maaco extensively used, caused to be advertised, and publicized throughout the United States certain distinctive color schemes, logos, and symbols as trademarks, service marks, and trade dress to identify the source, origin, and sponsorship of its system's centers and services.

15. Among the many Maaco Marks, Maaco owns the following marks and, as

applicable, related logos: "Maaco," Maaco Collision Repair & Auto Painting," "Maaco Auto Painting and Bodyworks," "Uh Oh Better Get Maaco," and "America's Bodyshop," which are registered with the United States Patent and Trademark Office (Nos. 3006015, 1050442, 2853706, 2275957, 1480014, 1084252, 1084283, 1459555, 2787733).

16. Each franchisee or licensee who so manufactures, distributes, or sells Maaco's goods and services does so in association with the name "Maaco" and the Maaco Marks.

17. The relationship between Maaco and its franchisees is governed by the terms and conditions of the franchise and trademark agreements entered between Maaco and each franchisee.

18. The franchisee's license to use and display the Maaco Marks is contractually conditioned upon the franchisee meeting or exceeding a minimum threshold for quality of services and products associated with the integrity and goodwill of the Maaco Marks.

19. Maaco details its proprietary and unique methods, procedures, and techniques used to achieve the minimum levels of quality associated with the Maaco Marks (the "Maaco System") in its collection of best practices and statement of minimum performance (the "Operations Manual").

20. Since its founding, Maaco remains engaged in the business of franchising Maaco centers that utilize the Maaco System to specialize in motor vehicle painting, body repair, and other automotive products and services. As a result of the consistently high level of customer service arising from the use of its proprietary operating system and the substantial amount of money and effort invested in advertising over the Maaco System's many years, Maaco enjoys a substantial amount of goodwill and a large pool of customers.

21. Maaco franchises and licenses the right to operate a motor vehicle painting and body repair center using the Maaco System and displaying the Maaco Marks pursuant to the terms

and conditions of its written franchise agreement.

22. Pursuant to Maaco's franchise agreements, every Maaco franchisee is required to attend a training program designed to teach the Maaco System to franchisees and to operate their franchise in accordance with the minimum threshold of standards, specifications, policies, and procedures as set forth in the Operations Manual to ensure uniformity and protection of the integrity and goodwill associated with the Maaco Marks and Maaco System.

23. From time to time, Maaco provides franchisees with consultation and assistance to assist franchisee's compliance with the minimum operating thresholds in order to safeguard the integrity of the Maaco System and the Maaco Marks and ensure that franchisees are meeting or exceeding the minimum critical quality, safety, and service standards associated with the Maaco Marks.

24. As a result of its substantial investment of time, money, and effort to develop and safeguard the Maaco System, Maaco enjoys a favorable reputation and a positive image with the public as to the quality of goods and services available at Maaco motor vehicle painting and body repair centers. This reputation, goodwill, and image have been, and continue to be, valuable assets of Maaco.

25. Maaco endeavors to maintain its positive reputation and image by, among other things, (i) carefully identifying and selecting authorized franchise owners; and (ii) safeguarding the integrity and goodwill of the Maaco Marks by confirming those franchisees meet the minimum quality and service standards associated with the Maaco Marks.

26. As consideration for Maaco's agreement to disclose the Maaco System and allow its franchisees to use the Maaco System, display the Maaco Marks, and enjoy the substantial goodwill associated therewith, all franchisees agree to operate for a set term and forego

involvement with any other business providing motor vehicle painting and body repair or products during the term of their franchise agreement and for a specified time period after the termination of their franchise agreement.

27. These agreements and covenants are essential to maintaining the integrity of the Maaco Marks, the Maaco System, the associated goodwill, and Maaco's and its franchisees' investments in their businesses by, among other things, protecting Maaco and its franchisees from damage to the brand and from unfair and unlawful competition arising from former franchisees attempting to trade on their knowledge of the Maaco System and the goodwill associated with the Maaco System and the Maaco Marks.

<em>The Franchise Agreement</em>

28. On or about January 26, 2018, Maaco and the Operating Company entered into the Maaco Franchisor SPV LLC Franchise Agreement (the "Franchise Agreement") whereby Maaco agreed to grant, and Defendants agreed to assume, all of the obligations, terms and conditions contained therein. A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit A** and incorporated by reference as if fully set forth herein.

29. Aws Hattab and Eyas Hattab (the "Hattabs") each executed a Personal Guaranty, whereby they agreed to be jointly and severally liable with the Operating Company with respect to any payment or obligation required under the Franchise Agreement and amendments thereto. A true and correct copy of the Personal Guaranties is attached hereto as **Composite Exhibit "B"** and incorporated by reference as if fully set forth herein.

30. Pursuant to the terms of the Franchise Agreement, Maaco granted a limited license to Defendants to operate an automotive paint and collision repair shop known as Maaco Center M2889 located at 18 Interstate 32, Westfield, Indiana 46074 (the "Center") under the trade name

"Maaco" and using the Maaco Marks, for fifteen (15) years through and including January 15, 2034 (the "Term"). (Franchise Agreement § 3.A).

31. The Franchise Agreement granted Defendants the license to: (i) operate a motor vehicle painting and body repair center under the trade name "Maaco"; (ii) display the Maaco name, logo, and the Maaco Marks; (iii) receive training and access to the Maaco System; and (iv) participate in an established network of licensed motor vehicle painting and body repair centers, with products and services for which Maaco has created substantial demand through maintenance of the highest quality standards and extensive advertising. (Franchise Agreement § 1.A).

32. In exchange, Defendants agreed, among other things, to: (i) operate the Center for the full length of the Term (Franchise Agreement § 3.A); (ii) pay Maaco a continuing weekly royalty of nine percent (9%) of the gross receipts of the Center (Franchise Agreement § 5.A(4)); (iii) pay Maaco a continuing weekly advertising contribution in the greater amount of eight hundred fifty dollars ($850.00) or an amount equal to the weekly advertising budget of Maaco franchisees in Defendants' designated market area (Franchise Agreement 6.1.B); (iv) purchase paint, abrasives and other products and supplies from Maaco approved suppliers (Franchise Agreement § 7.L); and (v) make all payments in the manner and at the time required under the Franchise Agreement (Franchise Agreement § 7.L).

33. In exchange for the use of the Maaco System, among other things, the Franchise Agreement also prohibits Defendants from owning, maintaining, operating, engaging in, being employed by, advising, financing, or assisting any business providing motor vehicle painting or body repair services or products (a "Competitive Business") at the premises of the Center, within ten (10) miles of the Center, or within ten (10) miles of any other Maaco center existing at the time of the execution for a period of one (1) year after the termination of the Franchise Agreement.

(Franchise Agreement § 18.C).

34. Maaco's primary source of revenue from the operation of its Maaco franchise system is derived from the payment of franchise royalty fees. The majority of Maaco's advertising budget on behalf of its franchisees is derived from the advertising contributions remitted to Maaco by its franchisees. Both of these sources of revenue are based on weekly sales reported by the franchisees to Maaco.

35. Defendants agreed, among other things, that upon termination of the Franchise Agreement they shall immediately remove all signage and materials with the Maaco Marks and pay all amounts owed to Maaco and its subsidiaries or affiliates. (Franchise Agreement § 16.F).

*Defendants' Breach of the Franchise Agreement*

36. Defendants breached their obligations and were in default of the Franchise Agreement by failing or refusing to pay weekly continuing royalty fees, weekly advertising contributions, outstanding invoices for paint and supply purchases, and other amounts due and owing under the Franchise Agreement.

37. On August 31, 2022, Maaco provided Defendants with a written Notice of Default for failing to comply with their payment obligations and provided Defendants with fifteen (15) days to cure such defaults by paying the outstanding accounts receivable (the "Notice of Default").

38. On December 16, 2022, Maaco sent Defendants a Final Demand for Payment for Defendants' continued failure to pay their required royalty fees, advertising contributions, and paint and supply invoices under the Franchise Agreement and provided an additional seven (7) days to cure such default by paying the amounts owed in full (the "Final Demand").

39. Despite the opportunities and obligation to do so, Defendants failed and/or refused to cure the defaults or otherwise come in compliance under the Franchise Agreement. Such failure is a material breach of the Franchise Agreement.

40. As a result, Maaco sent Defendants a Notice of Termination of the Franchise Agreement on December 30, 2022 after Defendants failed to timely cure the defaults and continually failed to comply with the Franchise Agreement (the "Notice of Termination").

41. In the Notice of Termination, Maaco reminded Defendants of their post-termination obligations, including the obligation to pay all amounts due and owing under the Franchise Agreement.

42. To date, Defendants failed and/or refused to pay any amount due and owing to Maaco.

*Damages*

43. Defendants' material breaches of their obligations under the Franchise Agreement directly injured Maaco in the form of actual damages, as well as lost royalty fees, advertising contribution, and other fees for the remainder of the Term.

44. Maaco is entitled to compensation for these injuries and is entitled to be placed in the same position it would have been had the obligations under the Franchise Agreement and the Guaranty been performed. These damages include (i) the amounts owed to Maaco prior to or at the time of termination of the Franchise Agreement and (ii) the royalty fees, advertising contribution, and other amounts due under the remainder of the Term of the Franchise Agreement, which are the proximate result of Defendants' breaches.

45. Defendants' failure to failure to pay any amounts past due and owing, by the sole and independent decision of Defendants, were not caused by any action or inaction of Maaco.

46. As of December 5, 2022, Defendants owe the past due amount of One Hundred Forty-Nine Thousand Five Hundred Six and 30/100 Dollars ($149,506.30), which consists of past due royalty fees, advertising contributions, paint and supply invoices, and other fees due and owing under the Franchise Agreement at or prior to the time of termination (the "Past Due Amount").

47. Maaco's lost royalty fees and advertising contributions for the remainder of the Term are not conjectural, remote, or speculative because Maaco is able to determine these amounts with reasonable certainty.

48. Maaco is able to determine these amounts with reasonable certainty by using the average royalty fees and advertising contributions paid or required to be paid by Defendants and multiplying that amount by the number of months remaining in the Term.

49. Maaco mitigates its damages by aiming to replace the loss of the Center with a new Maaco franchised location for Maaco to begin realizing royalties and advertising contributions again after the premature closure of the Center. The timeframe for such mitigation varies based on a variety of factors, including, but not limited to, whether the former franchisee has complied with their post-termination obligations and non-compete and the particular area/market where the center is located.

50. As a result of Defendants' premature closing of the Center, Maaco has incurred lost royalty fees and advertising contributions for the remainder of the Term in the amount of approximately One Million Two Hundred Ninety-One Thousand Two Hundred Sixty-Two and 19/100 ($1,291,262.19) (the "Default Damages"), which consists of $505,984.93 in lost advertising contributions and $785,277.26 in lost royalties for the remainder of the Term.

51. Maaco is entitled to the Default Damages under the terms of the Franchise Agreement because those amounts: (i) are reasonably certain to have been realized except for the

breach of contract; (ii) are calculable and/or measurable with reasonable certainty; and (iii) were reasonably within the contemplation of the parties at the time the Franchise Agreement was entered.

52. Maaco engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the Franchise Agreement between Maaco and Defendants.

53. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## COUNT I
## Breach of the Franchise Agreement for Failure to Pay Amounts Owed to Maaco

54. Maaco re-alleges and re-avers paragraphs 1 through 53 above, which are incorporated by reference as if fully set forth herein.

55. Maaco and Defendants are parties to a valid and enforceable contract, the Franchise Agreement and the Personal Guaranties.

56. Maaco has performed all obligations required of it under the Franchise Agreement.

57. Despite Maaco's performance, Defendants breached their obligations and promises under the Franchise Agreement by failing to pay all royalty fees and advertising contributions that accrued prior to the date of termination of the Franchise Agreement.

58. As a result of Defendants' failures and breaches of the Franchise Agreement, the Franchise Agreement was terminated prior to the end of the Term of the Franchise Agreement.

59. Defendants further breached their obligations and promises under the Franchise Agreement by failing to pay all sums due and owing to Maaco upon the termination of the Franchise Agreement.

60. Defendants are in default under the Franchise Agreement by failing to pay Maaco

the total amount of One Hundred Forty-Nine Thousand Five Hundred Six and 30/100 Dollars ($149,506.30), consisting of the Past Due Amount owed to Maaco.

61. As a result of Defendants' breaches of the Franchise Agreement, Maaco has been directly and proximately damaged by, among other things, being deprived of the benefit of its bargain under the Franchise Agreement, which consists of: (i) past-due royalty fees, advertising contributions, and paint and supply invoices and (ii) royalties and advertising contributions from the date of the termination through the remainder of the Term.

62. Maaco is reasonably certain that such future royalty fees and advertising contributions would have been received but for Defendants' breach of contract.

63. Maaco's royalty fees and advertising contributions through the remainder of the Term can be ascertained and measured with reasonable certainty and reasonably should have been within the contemplation of the parties at the time the Franchise Agreement was executed as the probable result of the breach.

64. Maaco's damages for royalty fees and advertising contributions through the remainder of the Term flow directly from Defendants' breaches of the Franchise Agreement.

65. Maaco has exercised reasonable care and diligence to mitigate its damages.

66. Accordingly, Maaco seeks judgment against Defendants, jointly and severally, for the Past Due Amount, the Default Damages, and any other amounts due and owing to Maaco.

WHEREFORE, Maaco hereby respectfully requests this Court enter judgment in its favor against Defendants, jointly and severally, for: (a) the Past Due Amount due and owing under the Franchise Agreement and any other amount due and owing to Maaco; (b) the Default Damages; (c) pre-judgment interest; (d) reasonable attorneys' fees together with costs of litigation; and (e) all other relief this Court deems just and proper.

## COUNT II
## Breach of the Franchise Agreement for Violation of the Non-Compete

67. Maaco re-alleges and re-avers paragraphs 1 through 53 above, which are incorporated by reference as if fully set forth herein.

68. Maaco and Defendants are parties to valid and enforceable contracts, the Franchise Agreement and Personal Guaranties.

69. Maaco has performed all obligations required of it under the Franchise Agreement.

70. Defendants agreed they would not, among other things, own, maintain, engage in, be employed by, finance or make loans to, advise, assist, or have any interest in or relationship or association with any Competitive Business at the Premises of the Center or within a ten (10) mile radius of the Center or any other Maaco center or location for one year from termination or the date of compliance (Franchise Agreement § 18.C).

71. Despite Maaco's performance under the terms of the Franchise Agreement, the Defendants breached their material obligations and promises by operating a Competitive Business at the Premises of the Center.

72. As a direct and proximate result of Defendants' conduct of owning, operating, and/or engaging in a Competitive Business, Maaco is suffering actual damages.

73. As a direct and proximate result of Defendants' breach of the Non-Compete, Maaco has been damaged by, among other things, being deprived of the benefit of its bargain under the Franchise Agreement and by its goodwill and reputation being harmed from Defendants' operation of a Competitive Business.

74. These breaches have caused and continue to cause Maaco irreparable harm.

75. Maaco is entitled to a preliminary and permanent injunction directing Defendants to: (i) cease and refrain from, for a period of one (1) year from the date of compliance, directly or

indirectly, any activity or conduct in which he may own, maintain, engage in, be employed by, finance or make loans to, advise, assist, or have any interest in or relationship or association with any Competitive Business at the Premises of the Center or within a ten (10) mile radius of the Center or any other Maaco center or location for one year from termination or the date of compliance, and (ii) otherwise, cease and refrain from diverting any business or customer away from Maaco to any competitor.

WHEREFORE, Maaco hereby respectfully requests this Court enter judgment in its favor against Defendants, jointly and severally, for:

(a) Preliminary and permanent injunctive relief directing and/or enjoining Defendants, their agents, servants, employees, and attorneys, and all persons in active concert or participation with Defendants to/from:

   i. Owning, managing, or operating a motor vehicle painting and/or body repair business at 18 Interstate 32, Westfield, Indiana 46074;

   ii. Owning, managing, or operating a motor vehicle painting and/or body repair business within a ten (10) mile radius of 18 Interstate 32, Westfield, Indiana 46074;

   iii. Owning, managing, or operating a motor vehicle painting and body repair business within a ten (10) mile radius of any Maaco center; and

   iv. File with the Court, and serve upon Maaco, a written statement under oath setting forth in detail the manner in which he has complied with the injunction within ten (10) days of issuance;

(b) Economic damages sustained as a result of the violation of the Franchise Agreement;

(c) Maaco's reasonable attorneys' fees together with court costs and expenses of litigation;

(d)   All costs, disbursement, and other recoverable expenses of this action; and

(e)   All other relief this Court deems just and proper.

## COUNT III
## Breach of the Personal Guaranties

76.   Maaco re-alleges and re-avers paragraphs 1 through 53 above, which are incorporated by reference as if fully set forth herein.

77.   Pursuant to the terms of the Personal Guaranties, the Hattabs agreed to personally guaranty the Operating Company's performance of all terms, conditions, and obligations contained in the Franchise Agreement applicable to the operation of the Center.

78.   As a result, the Hattabs are obligated to ensure, among other things, that the Operating Company operate the Center in accordance with the terms of the Franchise Agreement, accurately report gross revenues, and pay all amounts due under the Franchise Agreement for the entire Term of the agreement.

79.   Despite these obligations, the Hattabs failed and/or refused to comply with their obligations under the Personal Guaranties.

80.   In addition, the Hattabs are each in breach of the Personal Guaranties by failing to pay the Past Due Amount and the Default Damages and by allowing the Operating Company to operate and being personally involved in the operation of a competing business in violation of the Franchise Agreement.

81.   Pursuant to the Franchise Agreement, the Operating Company agreed it would not, among other things, own, maintain, operate, engage in, be employed by, finance, or assist any Competitive Business at the location of the Center, within ten (10) miles of the Center, or within ten (10) miles of any other Maaco center existing at the time of the execution for a period of one (1) year after the termination of the Franchise Agreement.

82. Despite Maaco's performance, Defendants breached their material obligations and promises under the Franchise Agreement and the Personal Guaranties by continuing to operate an motor vehicle painting or body repair services or products at the same location as the Center and by failing to pay all amounts due and owing to Maaco.

83. As a direct and proximate cause of the Defendants' conduct, Maaco has suffered actual damages.

84. The Hattabs personally and unconditionally guaranteed to pay and perform each and every undertaking, agreement and covenant set forth in the Franchise Agreement and to be personally bound by, and liable for each breach of each and every provision in the Franchise Agreement.

85. These breaches have caused and continue to cause Maaco irreparable harm.

86. These breaches have directly and proximately caused Maaco harm and damages by deprived of the benefit of its bargain under the Franchise Agreement and such harm and damages consist of: (i) irreparable harm to Maaco's goodwill and reputation from Defendants' operation of a Competitive Business; (ii) past-due royalty fees, advertising contributions, and paint and supply invoices; and (iii) royalties and advertising contributions from the date of the termination through the remainder of the Term.

87. Maaco is entitled to a preliminary and permanent injunction directing the Hattabs to: (i) cease and refrain from, for a period of one (1) year from the date of compliance, directly or indirectly, any activity or conduct in which he may own, maintain, engage in, be employed by, finance or make loans to, advise, assist, or have any interest in or relationship or association with any Competitive Business at the Premises of the Center or within a ten (10) mile radius of the Center or any other Maaco center or location for one year from termination or the date of

compliance, and (ii) otherwise, cease and refrain from diverting any business or customer away from Maaco to any competitor.

WHEREFORE, Maaco hereby respectfully requests this Court enter judgment in its favor against the Hattabs, jointly and severally, together with the Operating Company for:

(a) Preliminary and permanent injunctive relief directing and/or enjoining Defendants, their agents, servants, employees, and attorneys, and all persons in active concert or participation with Defendants to/from:

  i. Owning, managing, or operating a motor vehicle painting and/or body repair business at 18 Interstate 32, Westfield, Indiana 46074;

  ii. Owning, managing, or operating a motor vehicle painting and/or body repair business within a ten (10) mile radius of 18 Interstate 32, Westfield, Indiana 46074;

  iii. Owning, managing, or operating a motor vehicle painting and body repair business within a ten (10) mile radius of any Maaco center; and

  iv. File with the Court, and serve upon Maaco, a written statement under oath setting forth in detail the manner in which he has complied with the injunction within ten (10) days of issuance;

(b) Economic damages sustained as a result of the violation of the Franchise Agreement, including the Past Due Amount and the Default Damages;

(c) Pre-judgment interest on the Past Due Amount;

(d) Maaco's reasonable attorneys' fees together with court costs and expenses of litigation;

(e) All costs, disbursement, and other recoverable expenses of this action; and

(f) All other relief this Court deems just and proper.

Respectfully Submitted: July 21, 2023.  /s/ Danielle Diller
Danielle Diller, Esq.
North Carolina Bar No. 60026
Florida Bar No. 1008830
Email: ddiller@shankmanleone.com
Dennis D. Leone, Esq.
(*Pro Hac Vice Forthcoming*)
Florida Bar No. 069401
Email: dleone@shankmanleone.com
SHANKMAN LEONE, P.A.
707 N. Franklin Street, 5th Floor
Tampa, Florida 33602
Telephone: 813-223-1099
*Attorneys for Plaintiff, Maaco Franchisor SPV LLC*